UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| TAYAH LACKIE,<br><br>               Plaintiff,<br><br>v.<br><br>MINNESOTA STATE UNIVERSITY STUDENT ASSOCIATION, INC. *d/b/a Students United*; ST. CLOUD STATE UNIVERSITY; ROBBYN R. WACKER, *in her personal and official capacity as President of St. Cloud State University*; and LARRY LEE, *in his personal and official capacity as Vice President for Finance and Administration at St. Cloud State University*,<br><br>               Defendants. | Case No. 24-cv-1684 (LMP/LIB)<br><br>**ORDER ON PLAINTIFF'S STANDING** |

---

James V. F. Dickey, Douglas P. Seaton, and Alexandra K. Howell, **Upper Midwest Law Center**, **Minnetonka, MN**, and Jacob Huebert and James J. McQuaid, **Liberty Justice Center**, **Austin, TX**, for Plaintiff.

Tamara L. Novotny, **Cousineau Malone, P.A.**, **Minnetonka, MN**, for Defendant Minnesota State University Student Association, Inc. d/b/a Students United.

Nicholas J. Pladson and Alexander Robertson Sloan, **Office of the Minnesota Attorney General**, **St. Paul, MN**, for Defendants St. Cloud State University, Robbyn R. Wacker, and Larry Lee.

      Plaintiff Tayah Lackie ("Lackie") alleges that she was required to pay fees to, and become a member of, a student association as a condition of her enrollment as a student at St. Cloud State University, in violation of her First Amendment rights. *See* ECF No. 1 ¶¶ 1–8. While this case was pending before United States District Judge Jerry W.

1

Blackwell, Defendants moved to dismiss Lackie's complaint. ECF Nos. 17, 22. After hearing those motions, Judge Blackwell denied the motions without prejudice and ordered the parties to conduct limited discovery into whether Lackie has standing to sue and to submit briefs addressing the issue. ECF No. 31. Having now considered those briefs (ECF Nos. 35, 37, 38), the Court enters the following order.

## FACTUAL BACKGROUND

Lackie began taking classes at St. Cloud State University ("SCSU") in the fall of 2021 as a high school student. ECF No. 1 ¶¶ 37–38. After graduating from high school in 2023, Lackie continued her studies at SCSU, ultimately graduating from SCSU on May 3, 2024. *Id.* ¶¶ 11, 39.

While Lackie was an undergraduate student at SCSU from 2023 to 2024, she was required by Minnesota state law and the policy of the Board of Trustees of the Minnesota State Colleges and Universities ("Board of Trustees") to pay fees to, and become a member of, the Minnesota State University Student Association ("Students United"). *Id.* ¶¶ 1, 16; Minn. Stat. § 136F.22; Minn. State Bd. of Trs. Pol'y 3.7[1]. Students United is recognized by the Board of Trustees as the statewide student association for state university students in Minnesota. Minn. State Bd. of Trs. Pol'y 3.7(1). The stated mission of Students United is "to educate and inform students about higher education issues that affect their lives as students, while providing opportunities for these students to use this knowledge to advocate on behalf of all Minnesota State University students."

---

[1] This policy is available at https://www.minnstate.edu/board/policy/307.html [https://perma.cc/77RZ-32GS].

2

ECF No. 40-1 at 30. As part of paying her tuition and fees to SCSU, SCSU charged Lackie $9.60 for the fall 2023 semester and $12.00 for the spring 2024 semester in fees that were ultimately apportioned to Students United. ECF No. 1 ¶ 41; ECF No. 41-1 at 2–3. These fees were mandatory and were calculated at the rate of $0.80 per credit. ECF No. 40-1 at 23. Lackie was not given an opportunity to opt out of paying fees to Students United. ECF No. 39 ¶ 14.

Lackie did not understand that she was a member of, and was paying fees to, Students United until late January 2024, when she was informed by an employee of the Upper Midwest Law Center that she may be paying fees to Students United. ECF No. 41-2 at 2. Lackie verified the charges on her tuition statements and researched Student United's website. ECF No. 41-2 at 2–3. Before being contacted by the Upper Midwest Law Center, Lackie did not recall receiving any correspondence from Students United, SCSU, or a university administrator about what Students United was, that she was required to be a member of Students United to attend SCSU, or that she was required to pay fees to Students United to attend SCSU. ECF No. 39 ¶¶ 12–13.

According to Lackie, Students United publicly advocates for a variety of policy positions that she does not agree with, including the abolition of student debt. ECF No. 1 ¶¶ 21–35. Lackie states that she did not understand until late January 2024 that Students United was engaged in political advocacy. ECF No. 39 ¶ 9. Accordingly, six days after graduating from SCSU, Lackie commenced this action against Students United, SCSU, Robbyn R. Wacker ("Wacker"), in her personal and official capacity as President of

SCSU, and Larry Lee ("Lee"), in his personal and official capacity as Vice President for Finance and Administration at SCSU.[2] *See* ECF No. 1.

Count I of the complaint alleges that Defendants violated the First Amendment by requiring Lackie to pay fees to Students United as a condition of enrollment at SCSU. *Id.* ¶¶ 51–58.  Count II of the complaint alleges that Defendants violated the First Amendment by requiring Lackie to become a member of Students United as a condition of enrollment at SCSU. *Id.* ¶¶ 59–65.  Count III of the complaint alleges an unjust enrichment claim against Students United and seeks to recover the fees Lackie paid to Students United. *Id.* ¶¶ 66–71.  Lackie seeks a declaratory judgment, damages in the amount of the fees that Lackie paid to Students United, nominal damages and damages for dignitary harm, and attorneys' fees and costs. *Id.* at 18.

## ANALYSIS

Article III standing is not a technicality—it is the constitutional price of admission to federal court.  Standing "must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016) (citation omitted) (internal quotation marks omitted).  Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies."

---

[2] The Court observes that Wacker no longer appears to be the President of SCSU, and Lee no longer appears to be the Vice President for Finance and Administration. *See* ECF No. 38 at 1 (referring to "then-President" Wacker and "then-Vice President" Lee). Although these proceedings "should be in the substituted party's name," Fed. R. Civ. P. 25(d), because the Court is dismissing Wacker and Lee from this action, it does not further address this misnomer.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To meet the "irreducible constitutional minimum" required to establish standing, a plaintiff has the burden to show three elements: "(1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Moreover, standing "is not dispensed in gross": a plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citation omitted) (internal quotation marks omitted). The standing inquiry is not, however, "an assessment of the merits of a plaintiff's claim." *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016). In assessing Article III standing, the Court assumes that "on the merits the plaintiffs would be successful in their claims." *Id.* (citation omitted).

Because "standing is an element of federal subject matter jurisdiction," the Court considers the parties' arguments under the framework of Fed. R. Civ. P. 12(b)(1). *Sioux Falls Cable Television v. South Dakota*, 838 F.2d 249, 251 (8th Cir. 1988). When the parties dispute the existence of subject-matter jurisdiction by offering evidence outside of the pleadings—as the parties have done here—a "factual attack" to jurisdiction is raised, and the Court does not assume the truthfulness of the complaint's factual allegations. *Osborn v. United States*, 918 F.2d 724, 729 & n.6 (8th Cir. 1990).

Although Lackie ultimately has standing to proceed with her lawsuit, it is limited to certain claims against certain defendants. Specifically, Lackie has standing to seek monetary damages in Count I—alleging a First Amendment violation by requiring her to pay fees to Students United (ECF No. 1 ¶¶ 51–58)—against SCSU and Students United. Lackie also has standing to bring Count III—alleging unjust enrichment (*id.* ¶¶ 66–71)—against Students United. However, Lackie does not have standing to bring Count II—alleging a First Amendment violation by requiring her to be a member of Students United as a condition of enrollment at SCSU (*id.* ¶¶ 59–65)—against any of the presently named defendants. And Lackie does not have standing to bring any of her claims against Wacker or Lee.

## I.     Declaratory Judgment

Defendants first assert that because she is no longer a student at SCSU, Lackie lacks standing to seek declaratory relief. ECF No. 35 at 8–9; ECF No. 38 at 5–6. Lackie requests a declaration that "Defendants' forcing [Lackie] to associate with and subsidize the political activity and speech of Students United as a condition of her enrollment at St. Cloud State University violated [Lackie's] First Amendment rights." ECF No. 1 at 18. The problem is that Lackie is not currently a student of SCSU and no longer pays fees to Students United, so her requested declaratory relief seeks only to "proclaim liability for a past act," rather than "define the legal rights and obligations of the parties in anticipation of some future conduct." *Just. Network, Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019) (citation omitted). Declaratory relief is unavailable in such circumstances. The Eighth Circuit has squarely held that "declaratory relief is limited to

*prospective* declaratory relief." *Id.* (citation omitted).  Accordingly, Lackie lacks standing to seek retrospective declaratory relief.

To avoid this straightforward conclusion, Lackie proffers a variety of authority to maintain her request for declaratory relief; none are availing.  First, Lackie cites *Wolff v. McDonnell*, 418 U.S. 539 (1974), for the proposition that "a declaratory judgment as a predicate to a damages award would not be barred." *Id.* at 555.  But *Wolff*'s discussion of declaratory judgments had nothing to do with standing; rather, *Wolff* was discussing whether a writ of habeas corpus or an action under Section 1983 was the proper mechanism for seeking damages resulting from lost good-time credits.  *See id.*  *Wolff* is far afield of the standing issues presented in this case.

Lackie also cites to a variety of nonbinding decisions from other jurisdictions which appear to hold that a court may provide retrospective declaratory relief to the extent that such relief is "intertwined" with a claim for monetary damages.  *See PETA v. Rasmussen*, 298 F.3d 1198, 1202–03 n.2 (10th Cir. 2002); *Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004); *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2024 WL 3400258, at *7 (D.D.C. July 12, 2024); *Pucket v. Rounds*, No. 03-cv-5033-KES, 2006 WL 120233, at *6 (D.S.D. Jan. 17, 2006).  These cases would seem to suggest that if Lackie has standing to pursue monetary damages, she automatically has standing to request retrospective declaratory relief.

Nevertheless, the Court respectfully declines to follow the reasoning of these courts for several reasons.  First, the Court observes that the conclusion of these courts has been rejected by other courts.  *See, e.g.*, *Mendia v. Garcia*, 165 F. Supp. 3d 861, 894

7

(N.D. Cal. 2016); *Short v. N.J. Dep't of Educ.*, No. 23-21105-ESK-EAP, 2024 WL 3424729, at *7–9 (D.N.J. July 16, 2024); *J.M. v. Major*, No. 6:18-cv-00739-YY, 2018 WL 7104882, at *3 (D. Or. Oct. 2, 2018). Second, granting retrospective declaratory relief directly conflicts with the Eighth Circuit's holding that "declaratory relief is limited to *prospective* declaratory relief." *Just. Network*, 931 F.3d at 764. Third, the notion that standing to seek declaratory relief may be bootstrapped onto standing to seek damages runs counter to the Supreme Court's holding that a plaintiff "must demonstrate standing separately for each form of relief sought." *Laidlaw*, 528 U.S. at 185; *accord Digit. Recognition Network v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015) (holding that a plaintiff "must establish standing for each type of remedy sought, including declaratory and injunctive relief").

The Court recognizes that, for all practical purposes, Lackie will receive the declaration she requests if she prevails on her damages claim against Students United and SCSU. But that is not a reason to allow her request for declaratory relief to proceed; in fact, the superfluity of declaratory relief is a reason to *dismiss* that requested relief. *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.3 (3d ed. June 2024 Update) ("The simplest theoretical perspective on standing draws directly from our tradition that unnecessary judicial decisions should be avoided."). Such judicial restraint is appropriate here. The Court will therefore dismiss Lackie's request for declaratory relief for lack of standing.

8

## II.     Standing to Sue SCSU, Wacker, and Lee

SCSU, Wacker, and Lee argue that Lackie lacks standing to sue them because they are not involved in enforcing the fee collection and membership requirement for Students United. ECF No. 38 at 6–9. That argument relates to standing's second and third elements: traceability and redressability. As for traceability, "Article III requires the plaintiff to show a causal connection between the state officials and the alleged injury." *Digit. Recognition Network*, 803 F.3d at 957. A plaintiff lacks standing to sue a defendant if the plaintiff's injury is the "result of 'the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). To maintain standing against SCSU, Wacker, and Lee, Lackie must therefore show that those defendants had "some connection with the enforcement" of the challenged policy. *Id.* (citations omitted). Relatedly, if a plaintiff cannot show that her injury is traceable to the defendant, then the plaintiff likely will not be able to meet standing's third requirement—redressability— "because in that scenario it is not possible for a court to grant a remedy that would redress the plaintiff's complained-of injury." *Doe v. Piper*, 165 F. Supp. 3d 789, 801 (D. Minn. 2016) (citing *Digit. Recognition Network*, 803 F.3d at 958).

Assuming that Lackie has suffered a constitutional injury from the mandatory fees and membership in Students United, the next question is whether there is a "causal connection" between Lackie's alleged injury and the actions of SCSU, Wacker, and Lee. *Digit. Recognition Network*, 803 F.3d at 957. In evaluating the involvement of SCSU, Wacker, and Lee in enforcing the fee and membership requirements, the Court looks to the underlying policies challenged by Lackie. *See id.* at 958 (reviewing challenged

statutory scheme to evaluate defendant's enforcement power); *Worth v. Jacobson*, 108 F.4th 677, 684 n.3 (8th Cir. 2024) (same); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (same).

In this case, two policies are relevant to the standing inquiry. First, Minn. Stat. § 136F.22 authorizes the Board of Trustees to "recognize one statewide student association for the state universities" (here, Students United), and that the fees for Students United are set by Students United (subject to the Board of Trustees's revision) and are "to be collected by [the Board of Trustees]." Minn. Stat. § 136F.22, subds. 1–2. The statute also provides that all students enrolled on [Minnesota state university] campuses shall be members of their respective statewide association." *Id.*, subd. 1. Finally, the statute provides that "[f]ees must be collected by each state college and university," which are then "credited to each association's account to be spent as determined by that association." *Id.*, subd. 2.

Therefore, the statute contemplates that three entities are involved in collecting and dispersing fees for Students United: the Board of Trustees, the state university, and Students United. Importantly, though, the state university has no role in determining that students are required to be members of Students United—the enforcement power for that decision rests with the Board of Trustees. *Id.*, subd. 1.

These conclusions are bolstered by considering the second relevant policy at issue: Minnesota State Board of Trustees Policy 3.7. The Board of Trustees policy recognizes Students United as the statewide student association and provides that "all students enrolled in credit courses will be members of" Students United. Minn. State Bd. of Trs.

Pol'y 3.7(1)–(2). Students United is responsible for setting its fees (subject to the Board of Trustees's revision), and those fees must be "collected for each enrolled credit by each college and university" and "forwarded by the college or university to the statewide student association whether or not the college or university has received payment for fees." Minn. State Bd. of Trs. Pol'y 3.7(3). Finally, the policy delegates implementation of the policy to the chancellor of the Minnesota State Colleges and Universities system. Minn. State Bd. of Trs. Pol'y 3.7(5).

Notably, neither the statute nor the Board of Trustees' policy provides any involvement for SCSU's administrators in collecting Students United's fees or determining membership in Students United.[3] Although Wacker and Lee may have general administrative authority over SCSU, "such a general executive responsibility is an insufficient connection to the enforcement of a statute" to confer standing. *Calzone*, 866 F.3d at 870. Indeed, in her brief on standing, Lackie provides no particularized arguments as to Wacker's and Lee's involvement in enforcing the challenged policies. The Court therefore concludes that because Lackie's alleged injury is not traceable to Wacker and Lee, the Court must dismiss Lackie's claims against those defendants for lack of standing.[4]

---

[3] Neither the Board of Trustees nor the Chancellor of the Minnesota State College and University system is a party to this lawsuit.

[4] The Court acknowledges that SCSU, Wacker, and Lee earlier challenged whether the claims Lackie brought against them were barred by sovereign immunity and qualified immunity. ECF No. 18 at 8–14, ECF No. 38 at 9 n.5. That decision is for a later day. And indeed, it is now unnecessary in relation to Wacker and Lee.

As for Lackie's claims against SCSU, the Court is persuaded that Lackie has standing to bring Count I of her complaint against SCSU, but not Count II. Both Minn. Stat. § 136F.22 and the Board of Trustees's policy require SCSU to collect fees on behalf of Students United. Because state law charges SCSU with "enforc[ing] the complained-of provision," SCSU has a sufficient connection to enforcement of the challenged fee policy. *Digit. Recognition Network*, 803 F.3d at 957–58 (citation omitted); *see Worth*, 108 F.4th at 684 n.3 (standing met when state law delegated "duties connected with the statute's enforcement" to the defendant).

However, there is no indication that SCSU is responsible in any way for enforcing the membership requirement. Rather, Minn. Stat. § 136F.22 and the Board of Trustees's policy delineate two entities responsible for enforcing that policy: (1) the Board of Trustees, which recognizes Students United as the statewide student association and promulgated the rules requiring membership in Students United, Minn. Stat. § 136F.22, subd. 1; Minn. State Bd. of Trs. Pol'y 3.7(1)–(2); and (2) the chancellor of the Minnesota State Colleges and Universities system, who is responsible for implementing the Board of Trustees's policy, Minn. State Bd. of Trs. Pol'y 3.7(5). Because there is no role for SCSU to play in requiring its students to become members of Students United, Lackie cannot maintain Count II of her complaint against SCSU.

### III.   Standing to Sue Students United

#### a. Injury-in-Fact

The Court next considers whether Lackie has standing to seek monetary damages against Students United in Counts I through III of her complaint. As for the first element

of standing—injury-in-fact—Lackie must allege a legally cognizable injury that "actually exist[s]" and that affects her "in a personal and individual way." *Spokeo, Inc.*, 578 U.S. at 339–40. This Lackie has done, for Lackie alleges that she was required to pay fees to Students United and was compelled to associate with Students United, even though Students United expressed policy positions with which Lackie disagrees. ECF No. 1 ¶¶ 51–65. The Supreme Court has recognized that "[i]t infringes on the speech and beliefs of the individual to be required, by [a] mandatory student activity fee program, to pay subsidies for the objectionable speech of others" without adequate safeguards to protect students' First Amendment interests. *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 231 (2000). If Lackie succeeds in proving that SCSU and Students United failed to take those adequate precautions—as the Court must assume she will at this stage, *Am. Farm Bureau Fed'n*, 836 F.3d at 968—she will have adequately stated an injury under *Southworth*.

### b. Traceability and Redressability

The traceability and redressability elements of standing pose thornier issues. Here, it is important to be specific about the particular "challenged conduct" that Lackie asserts. *Arc of Iowa*, 94 F.4th at 710. Lackie does not assert that Students United's political advocacy, standing alone, caused her any constitutional injury. Rather, Lackie's constitutional injury stems from two discrete, challenged actions: (1) the mandatory collection of fees for Students United, and (2) the requirement that Lackie be a member of Students United. *See* ECF No. 1 at 15 ("Defendants violated Plaintiff's First Amendment rights *by requiring her to pay fees to Students United* as a condition of

13

enrollment at St. Cloud State University.") (emphasis added); *id.* at 16 ("Defendants violated Plaintiff's First Amendment rights *by requiring her to be a member of Students United* as a condition of enrollment at St. Cloud State University.") (emphasis added).

Therefore, for purposes of the traceability analysis, the Court must ask: who is responsible for enforcing the mandatory collection of fees, and who is responsible for enforcing Lackie's membership in Students United? *See Digit. Recognition Network*, 803 F.3d at 957 (citation omitted) (explaining that traceability requires the plaintiff to show that the defendant had "some connection" with the enforcement of the challenged policy).

### i. Counts I and III (Mandatory Fee Collection)

As noted above, Minnesota law and the Board of Trustees's policy provide that Students United is responsible for setting the mandatory fee, which is collected by SCSU and the Board of Trustees and forwarded to Students United. Minn. Stat. § 136F.22, subd. 2; Minn. State Bd. of Trs. Pol'y 3.7(3). Students United's role in setting and collecting the fee gives Students United "some connection" with the fee collection scheme, meaning that Lackie's constitutional injury is traceable to Students United. *Digit. Recognition Network*, 803 F.3d at 957 (citation omitted). And Lackie's constitutional injury related to the mandatory collection of fees can also be redressed by a judgment against Students United: because Students United holds the challenged fees in its account, Minn. State Bd. of Trs. Pol'y 3.7(3), the Court can order Students United to refund Lackie's fees as compensatory damages, *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021).

Students United does not meaningfully dispute any of these conclusions, but instead suggests that standing is lacking because Students United has a "good-faith defense" to Lackie's Section 1983 claims. ECF No. 35 at 9–10. Some courts have recognized a "good-faith defense" to Section 1983 liability for private parties acting under color of law when such parties demonstrate that they "reasonably relie[d] on established law." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 942 F.3d 352, 366 (7th Cir. 2019); *see also Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994); *Wyatt v. Cole*, 994 F.2d 1113, 1117–21 (5th Cir. 1993). Although it does not appear that the Eighth Circuit has squarely addressed whether Section 1983 affords private actors a good-faith defense to liability, at least one court in this District has held so. *See Hoekman v. Educ. Minn.*, 519 F. Supp. 3d 497, 503–04 (D. Minn. 2021) (Nelson, J.).

The Court need not decide at this time whether a good-faith defense exists because such a defense is irrelevant to the standing inquiry. The good-faith defense is an affirmative defense, *id.* at 503, and an affirmative defense is a defense to liability on the merits, *see Safeway Transit LLC v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020). But "whether [Lackie's] claims may succeed on the merits is a question separate and apart from [the Court's] standing analysis." *Graham v. Catamaran Health Sols.*, 940 F.3d 401, 408 (8th Cir. 2017). Today, the Court "must assume that on the merits [Lackie] would be successful in [her] claim." *Am. Farm Bureau Fed'n*, 836 F.3d

15

at 968. Assuming that Lackie would succeed on her First Amendment and unjust enrichment claims against Students United, Lackie has sufficiently demonstrated an injury-in-fact that is traceable to Students United and redressable by a judgment against Students United.

As to Count III (Lackie's unjust enrichment claim), Students United observes only that an unjust enrichment claim under Minnesota law requires the payment of money to the defendant to be "illegal or unlawful." ECF No. 35 at 10 (citing *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012)). Students United argues that because payment of fees to Students United was authorized under Minnesota law at the time the fees were collected from Lackie, such payments were not "illegal or unlawful." *Id.* Again, this argument is irrelevant to standing; rather, the argument goes to the merits of whether Lackie has plausibly stated an unjust enrichment claim as a matter of law. *See Graham*, 940 F.3d at 408. Students United may certainly raise this argument again during a motion to dismiss or motion for summary judgment, but it would be inappropriate to consider that merits question when deciding the narrow issue presented here: standing. *Id.* This, also, is a question for another day.

In sum, the Court concludes that Lackie has standing to bring Counts I and III against Students United.

### ii. Count II (Membership Requirement)

The Court concludes, however, that Lackie lacks standing to bring Count II against Students United because Students United has no connection to enforcing the membership requirement. Strange as it may be, Students United has absolutely no say in the

16

composition of its membership; rather, Students United's membership is determined and enforced by the Board of Trustees (which recognizes Students United as the statewide student association and promulgated the rules requiring membership in Students United, Minn. Stat. § 136F.22, subd. 1; Minn. State Bd. of Trs. Pol'y 3.7(1)–(2)), and the chancellor of the Minnesota State Colleges and Universities system (who is responsible for implementing the Board of Trustees's policy, Minn. State Bd. of Trs. Pol'y 3.7(5)). Because Lackie's constitutional injury alleged in Count II is the "result of the independent action of some third party not before the court" (namely, the Board of Trustees and the chancellor), that constitutional injury is not traceable to Students United. *Digit. Recognition Network*, 803 F.3d at 957 (citation omitted) (internal quotation marks omitted).

    Lackie relies heavily on *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 585 U.S. 878 (2018), but that case does not help her. In *Janus*, a public employee was required by state law to contribute a percentage of union dues to the employee's representative union. *Id.* at 886–87. Although the employee was required to contribute union dues, the employee was not required to (and did not, in fact) join the union. *Id.* at 888–89. The employee sued the union, claiming that the mandatory payment of union dues violated the First Amendment, and the Supreme Court agreed. *Id.* at 930. In so holding, the Supreme Court held that the employee "clearly" had Article III standing. *Id.* at 890. Seizing upon *Janus*'s statement that the employee "clearly" had standing against the union, Lackie contends that she makes identical claims to the

17

employee in *Janus*, which necessarily means that she has standing to pursue all of her claims against Students United. ECF No. 37 at 9–10.

Not quite. Like the employee in *Janus*, Lackie brings a First Amendment claim against Students United for its mandatory fee-collection policy. Assuming *Janus* applies to the higher education context, the factual parallels between the fee collection scheme in *Janus* and the fee collection scheme for Students United lend support to Lackie's claim that she has standing to press her fee-collection claims against Students United.

But *Janus* did not deal with a union membership requirement like the one implicated here; in fact, the plaintiff in *Janus* had *refused* to join the union. *Janus*, 585 U.S. at 888–89. *Janus*'s standing analysis therefore has nothing to say about Lackie's standing to pursue her membership-requirement claim against Students United. And because standing is claim-specific, *Laidlaw*, 528 U.S. at 185, Lackie's standing to pursue her fee-collection claim against Students United does not cloak her with standing to pursue her membership-requirement claim against Students United. Having considered the statutory and policy framework governing the membership requirement, the Court is not persuaded that Lackie's injury alleged in Count II is traceable to Students United. And because Lackie does not have standing to bring Count II against any of the currently named defendants, the Court will dismiss Count II without prejudice.

\*     \*     \*

In accordance with the foregoing analysis, the Court concludes that Count I (against SCSU and Students United) and Count III (against Students United) survive to

the extent they seek monetary damages. The remaining claims and defendants are dismissed from this action.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Robbyn R. Wacker is **DISMISSED** from this action.

2. Defendant Larry Lee is **DISMISSED** from this action.

3. Count II of Lackie's complaint is **DISMISSED WITHOUT PREJUDICE**.

4. Lackie's request for declaratory relief is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 6, 2025         *s/Laura M. Provinzino*
                                Laura M. Provinzino
                                United States District Judge