# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

TAYAH LACKIE,                                      Case No. 24-cv-1684 (LMP/LIB)

Plaintiff,

v.

MINNESOTA STATE UNIVERSITY
STUDENT ASSOCIATION, INC. *d/b/a*
*Students United*; ST. CLOUD STATE
UNIVERSITY; GEORGE SOULE, *in his*
*official capacity as Chair of the*
*Minnesota State Colleges and Universities*
*Board of Trustees*; DAWN
ERLANDSON, *in her official capacity as*
*Vice Chair of the Minnesota State*
*Colleges and Universities Board of*
*Trustees*; JAY COWLES; JIM
GRABOWSKA; TIM HUEBSCH;
JERRY JANEZICH; JACQUELINE
JOHNSON; JANA JOHNSON; ROGER
MOE; JAVIER MORILLO;
CHRISTOPHER RICHTER; KATHY
SHERAN; CHERYL TEFER, *in their*
*official capacities as Members of the*
*Minnesota State Colleges and Universities*
*Board of Trustees*; SCOTT OLSON, *in*
*his official capacity as Chancellor of the*
*Minnesota State Colleges and*
*Universities*; ROBBYN R. WACKER, *in*
*her personal and official capacity as*
*President of St. Cloud State University, or*
*her successor*; and LARRY LEE, *in his*
*personal and official capacity as Vice*
*President for Finance and Administration*
*at St. Cloud State University, or his*
*successor*,

Defendants.

**ORDER DENYING
STUDENTS UNITED'S
MOTION TO DISMISS AND
GRANTING THE
STATE DEFENDANTS'
MOTION TO DISMISS**

James V. F. Dickey, Douglas P. Seaton, and Alexandra K. Howell, **Upper Midwest Law Center**, **Minnetonka, MN,** and Jacob Huebert and James J. McQuaid, **Liberty Justice Center**, **Austin, TX**, for Plaintiff.

Tamara L. Novotny, **Cousineau Malone, P.A.**, **Minnetonka, MN**, for Defendant Minnesota State University Student Association, Inc. d/b/a Students United.

Nicholas J. Pladson and Alexander Robertson Sloan, **Office of the Minnesota Attorney General**, **St. Paul, MN**, for Defendants St. Cloud State University, George Soule, Jay Cowles, Jim Grabowska, Tim Huebsch, Jerry Janezich, Jacqueline Johnson, Jana Johnson, Roger Moe, Javier Morillo, Christopher Richter, Kathy Sheran, Cheryl Tefer, Scott Olson, Robbyn R. Wacker, and Larry Lee.

Plaintiff Tayah Lackie ("Lackie") alleges that she was required to pay fees to and become a member of a student association as a condition of her enrollment as a student at St. Cloud State University, in violation of her First Amendment rights. *See* ECF No. 57 ¶¶ 1–9. Lackie accordingly sued the student association—Minnesota State University Student Association (doing business as "Students United")—St. Cloud State University ("SCSU"), SCSU's then-President Robbyn R. Wacker ("Wacker"), and SCSU's then-Vice President for Finance and Administration Larry Lee ("Lee"). *See* ECF No. 1. The Court previously determined that Lackie did not have Article III standing to bring her claims against Wacker and Lee, but that she had standing to bring some of her claims against Students United and SCSU. ECF No. 42.

With leave of the Court, ECF No. 55, Lackie filed an amended complaint, in which she brings the same claims alleged in her original complaint and continues to name Students United, SCSU, Wacker, and Lee as defendants, ECF No. 57. Lackie also adds as defendants the members of the Minnesota State Colleges and Universities Board of

Trustees ("Board of Trustees") in their official capacities, and the Chancellor of the Minnesota State Colleges and Universities system ("Chancellor") in his official capacity.[1]

All Defendants move to dismiss Lackie's amended complaint. *See* ECF Nos. 64, 68. For the following reasons, Students United's motion is denied, and the State Defendants' motion is granted.

## FACTUAL BACKGROUND

Lackie began taking classes at St. Cloud State University ("SCSU") in the fall of 2021 as a high school student. ECF No. 57 ¶¶ 51–52. Lackie continued her studies at SCSU after graduating from high school in 2023, and ultimately graduated from SCSU on May 3, 2024. *Id.* ¶¶ 12, 53.

While Lackie was an undergraduate student at SCSU from 2023 to 2024, she was required by Minnesota state law and the policy of the Board of Trustees to pay fees to, and to become a member of, Students United. *See id.* ¶¶ 1, 23; Minn. Stat. § 136F.22; Minn. State Bd. Of Trs. Pol'y 3.7.[2] Students United is recognized by the Board of Trustees as the statewide student association for state university students in Minnesota. Minn. State Bd. of Trs. Pol'y 3.7(1). As part of paying her tuition and fees to SCSU, SCSU charged Lackie $9.60 for the fall 2023 semester and $12.00 for the spring 2024 semester in fees that were ultimately apportioned to Students United. ECF No. 57 ¶¶ 28, 55. These fees were

---

[1]    The Court refers to Wacker, Lee, SCSU, the Chancellor, and members of the Board of Trustees collectively as the "State Defendants."

[2]    This policy is available at https://www.minnstate.edu/board/policy/307.html [https://perma.cc/77RZ-32GS].

mandatory and were calculated at the rate of $0.80 per credit. *Id.* ¶ 31. Lackie does not recall ever receiving any information about Students United or the fee and membership requirement from SCSU, Students United, or other SCSU personnel, and she was not given an opportunity to opt out of paying fees to Students United. *Id.* ¶¶ 56–57, 59–60.

According to Lackie, Students United publicly advocates for a variety of policy positions, including the abolition of student debt. *Id.* ¶¶ 34–39. Lackie alleges that she was not made aware that Students United was engaged in political advocacy. *Id.* ¶ 57. Lackie does not agree with many of Students United's political positions, including its advocacy for abolishing student debt. *Id.* ¶¶ 61–64. Accordingly, six days after graduating from SCSU, Lackie brought this action against Students United, SCSU, Wacker, and Lee. *See* ECF No. 1.

Count I of Lackie's original complaint brought a Section 1983 claim, alleging that Students United, SCSU, Wacker, and Lee violated the First Amendment by requiring Lackie to pay fees to Students United as a condition of enrollment at SCSU. ECF No. 57 ¶¶ 51–58. Count II of the original complaint was also a Section 1983 claim, alleging that Students United, SCSU, Wacker, and Lee violated the First Amendment by requiring Lackie to become a member of Students United as a condition of enrollment at SCSU. *Id.* ¶¶ 59–65. Count III of the original complaint alleged an unjust enrichment claim against Students United and seeks to recover the fees Lackie paid to Students United. *Id.* ¶¶ 66–71. Lackie sought a declaratory judgment, damages in the amount of the fees that Lackie paid to Students United, nominal damages and damages for dignitary harm, and attorneys' fees and costs. *Id.* at 18.

Students United, SCSU, Wacker, and Lee moved to dismiss Lackie's original complaint, ECF Nos. 17, 22, but before deciding those motions, United States District Judge Jerry W. Blackwell—to whom this case was previously assigned—ordered the parties to engage in limited discovery and to brief the issue of Article III standing.  ECF No. 31.[3]

After the parties briefed the issue, the Court observed that state law and the Board of Trustees' policy vested four entities with the power to enforce the mandatory fee collection: the Board of Trustees, SCSU, Students United, and the Chancellor.  ECF No. 42 at 10–11.  The Court also observed that two entities were involved in enforcing the requirement that Lackie become a member of Students United: the Board of Trustees and the Chancellor.  *Id.* at 12.  Accordingly, the Court concluded that Lackie did not have standing to raise any of her claims against Wacker and Lee because they were not involved in enforcing the challenged policies.  *Id.* at 11.  The Court also concluded that Lackie had

---

[3]    Lackie raises an objection to the limited discovery on standing ordered by Judge Blackwell, arguing that it "improperly facilitated a one-sided investigation into Plaintiff's allegations, while Defendants simultaneously refused to allow Plaintiff to make any inquiry to evidence her constitutional injuries."  ECF No. 72 at 17 n.16.  The Court need not address this argument further, but merely offers a few observations.  First, Lackie did not object to the limited discovery at the time it was ordered, nor did she file a motion to compel discovery that she thought was being improperly withheld.  Second, to be perfectly candid, the limited discovery did not make a difference in this Court's decision on standing.  *See* ECF No. 42 at 4–18 (the Court's analysis on standing, which cites none of the exhibits offered by the parties through discovery).  Rather, the Court's decision on standing was based entirely on the allegations in the complaint and on the language of Minnesota statutes and the Board of Trustees' policies.  To the extent that Lackie suggests that she was prejudiced by the limited discovery, she was not.  *See Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 345 (8th Cir. 2012) (explaining that for a discovery ruling to constitute reversible error, the complaining party must show prejudice).

standing to bring Count I, but not Count II, against SCSU, and that Lackie had standing to bring Counts I and III, but not Count II, against Students United. *Id.* at 12, 14–18. The Court finally determined that Lackie did not have standing to seek declaratory relief, as the only relief Lackie sought was retroactive, not prospective. *Id.* at 6–8.

With leave of the Court, ECF No. 55, Lackie filed an amended complaint with the same three counts alleged against the same defendants named in the original complaint.[4] *See generally* ECF No. 57. Lackie also added as defendants the members of the Board of Trustees in their official capacities and the Chancellor in his official capacity. *See id.*

Students United and the State Defendants move to dismiss Lackie's amended complaint. ECF Nos. 64, 68.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this procedural

---

[4]    With one exception: Lackie no longer alleges Count II—the Section 1983 claim related to the membership requirement—against Students United. *See* ECF No. 57 at 21. The Court surmises this change is related to the Court's previous holding that Lackie lacks standing to pursue Count II against Students United. *See* ECF No. 42 at 16.

juncture, the court may consider the allegations in the complaint, "materials that do not contradict the complaint, [and] materials that are necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (citation omitted) (internal quotation marks omitted). Here, the Court considers only the allegations in the amended complaint, along with Minnesota statutes and the Board of Trustees' regulations, both of which are subject to judicial notice. *See McIndoo v. Burnett*, 494 F.2d 1311, 1313 (8th Cir. 1974).

## I.    Students United's Motion to Dismiss

The Court turns first to Students United's motion, which raises two arguments. First, Students United seeks dismissal of the Section 1983 claim in Count I on the grounds that Students United is not a state actor. ECF No. 66 at 9–18. Second, Students United seeks dismissal of the unjust enrichment claim in Count III because the fees it received were "legally justified" at the time Students United received the funds. *Id.* at 18–22. Neither argument is persuasive.

### a.    Whether Students United is a State Actor

Generally, only a state actor can face Section 1983 liability. *Doe v. N. Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021). That is because "the text and structure of the Constitution . . . enforc[e] [a] constitutional boundary between the governmental and the private." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). However, "a private entity can qualify as a state actor in a few limited circumstances." *Id.* at 809. The state-actor inquiry is "necessarily fact-bound" and entails a two-step analysis: first, whether the claimed deprivation "resulted from the exercise of a right or privilege having

its source in state authority," and second, whether Students United may be "appropriately characterized" as a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).

### i.    Whether the Collection of Fees is Rooted in State Authority

Students United does not appear to dispute that the claimed deprivation—here, the mandatory fee collection—is rooted in state authority. *See* ECF No. 66 at 10 (acknowledging that the amended complaint "seemingly is sufficient to satisfy the first part of the state actor analysis"). That concession is appropriate. The exercise of a right or privilege is rooted in state authority when the state grants a private entity the authority to exercise that right. *See Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). Here, Minnesota law and the Board of Trustees' policy explicitly grant Students United the right to set the amount of fees collected from students and the right to receive those fees. *See* Minn. Stat. § 136F.22, subds. 1–2; Minn. State Bd. of Trs. Pol'y 3.7(3). The collection of student fees, therefore, is a right afforded to Students United that is rooted in state authority.

### ii.    Whether Students United is "Appropriately Characterized" as a State Actor

Whether a private entity may be "appropriately characterized" as a state actor is "a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Nonetheless, the Supreme Court has identified several circumstances under which it is fair to characterize the action of a private entity as state action. *See Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019). State action may be found, for example, "when the government acts jointly

8

with the private entity." *Halleck*, 587 U.S. at 809 (citing *Lugar*, 457 U.S. at 941–42).  State

action may also be found "when the private entity performs a traditional, exclusive public

function." *Id.* (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).  Finally, a

private entity may become a state actor when it is "entwined with governmental policies,"

or when government is "entwined in [its] management or control." *Brentwood Acad.*, 531

U.S. at 296 (alteration in original) (quoting *Evans v. Newton*, 382 U.S. 296, 299, 301

(1966)).  Ultimately, these "circumstances are merely examples and not intended to be

exclusive," *Wickersham*, 481 F.3d at 597, and "a conclusion of state action under [one]

criterion . . . [is] in no sense unsettled merely because other criteria of state action may not

be satisfied by the same facts," *Brentwood Acad.*, 531 U.S. at 302.  Any one will do.

Applying this framework, the Court has little difficulty concluding that Students

United is appropriately characterized as a state actor under the "joint action" test.  The

Board of Trustees—unquestionably a state actor—has cloaked Students United with the

authority to act as the statewide student association for state university students.  Minn.

State Bd. of Trs. Pol'y 3.7(3).  State law accordingly vests Students United with the

authority to set its fees, which are reviewed jointly by the Board of Trustees.  *See* Minn.

Stat. § 136F.22, subd. 2.  SCSU—again, unquestionably a state actor—is then required to

collect those fees on Students United's behalf and to forward the collected fees to Students

United.  *See id.*  Therefore, in setting and collecting its fees, Students United works jointly

and indispensably with two state actors: the Board of Trustees and SCSU.

As the Supreme Court has "consistently held," a "private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 941. The regulatory scheme created by Minnesota state law and the Board of Trustees' policy does exactly that: Students United coordinates and works jointly with SCSU and the Board of Trustees to seize disputed property (here, Lackie's student fees).

Students United attempts to distinguish *Lugar* by arguing that it "did not proactively seek the assistance of SCSU or any other state entity as did the plaintiff in *Lugar*." ECF No. 76 at 4. Not so. Without the assistance of SCSU, Students United would have no mechanism to collect its fees; after all, state law requires SCSU to collect the fees and then "credit[]" those fees to Students United's account. Minn. Stat. § 136F.22, subd. 2. Take SCSU out of the equation, and Students United has neither the means nor the authority to collect the challenged fees. This regulatory design therefore contemplates SCSU as a necessary partner to Students United's fee collection process.

That regulatory scheme also demonstrates an "agreement or meeting of the minds between the private and state actors," a hallmark of joint action. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999). Students United sets its fees, which may be "revise[d] or reject[ed]" by the Board of Trustees. Minn. State Bd. of Trs. Pol'y 3.7(3). In essence, then, the Board of Trustees and Students United come to an agreement on the amount of fees to charge state university students. Then, as required by the Board of Trustees' policy, SCSU collects fees on behalf of Students United and forwards those fees to Students United's account "to be spent as determined by [Students United]." *Id.* At

base, Students United, SCSU, and the Board of Trustees engage in "concerted action" to levy a fee on all state university students. *Young v. Harrison*, 284 F.3d 863, 870 (8th Cir. 2002). Those facts sufficiently plead joint action between Students United and state actors.

The Court is further cognizant that amidst the factual variety of state-actor cases, "examples may be the best teachers." *Brentwood Acad.*, 531 U.S. at 296. In *Amidon v. Student Association of State University of New York*, the plaintiffs sued their university's student association, claiming that the university distributed funds to the student association collected pursuant to a mandatory student activity fee in a manner which violated the First Amendment. 399 F. Supp. 2d 136, 138 (N.D.N.Y. 2005), *aff'd*, 508 F.3d 94 (2d Cir. 2007). In holding that the student association was "clearly" a state actor under the joint-action test, the Court explained that "[t]he [association] determines the amount of the fee. The state collects it, enforces its payment, and turns it over to the [association]. The [association] distributes the money pursuant to state regulation and approval." *Id.* at 145.

The exact same could be said of Students United. Students United determines the amount of the fee. SCSU (a state actor) collects it, enforces its payment, and turns it over to Students United. And Students United receives that money and disburses it pursuant to state regulation and approval. Given the stark factual parallels between this case and *Amidon*, the Court finds the reasoning of *Amidon* persuasive and similarly holds that Students United is a state actor. *See id.*; *see also* 14A C.J.S. *Civil Rights* § 413 (May 2025 Update) ("A student association of a state university is a 'state actor' . . . if the association members work closely with university employees in the collection and allocation process.").

Students United tries to analogize this case to *Halleck* and *Brentwood Academy*, along with cases from the First Circuit and the District of Utah. ECF No. 66 at 13–18. But the decisions in those cases relied on different analytical tests than the joint-action test in evaluating state action. *See Halleck*, 587 U.S. at 809 (traditional, exclusive public function test); *Brentwood Acad.*, 531 U.S. at 297 (entwinement test); *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26–28 (1st Cir. 2002) (traditional, exclusive public function and entwinement tests); *Robertson v. Red Rock Canyon Sch., LLC*, No. 2:05-cv-758 TC, 2006 WL 3041469, at *3–5 (D. Utah Oct. 24, 2006).[5] As the Supreme Court has explained, the conclusion of state action under one test is "in no sense unsettled merely because other criteria of state action may not be satisfied by the same facts." *Brentwood Acad.*, 531 U.S. at 302. The regulatory scheme at issue here satisfies the joint-action test, so it need not satisfy the traditional public function or entwinement tests.

Students United next observes that this Court found in its order on standing that SCSU had "some connection" with the challenged fee collection and asserts that "something more than 'some connection' or some involvement with a government entity is required before Students United can be treated as a state actor for purposes of the First Amendment." ECF No. 66 at 12. Students United misreads the Court's order on standing;

---

[5]    It is not entirely clear which state-action test the *Robertson* court applied, but to the extent that it applied the joint-action test, the facts of *Robertson* are materially distinct from the facts of this case. In *Robertson*, the Court concluded that there was no evidence of "state influence, involvement, or control over the . . . decisions which are the subject of challenge." 2006 WL 3041469, at *5 (citation omitted). Here, the state plainly influences the challenged fee collection (by, for example, permitting the Board of Trustees to revise and approve the fee) and the state (specifically, SCSU) is involved in collecting the fee.

the use of the phrase "some connection" was tied to the analytical test for Article III standing.  *See Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956–57 (8th Cir. 2015) (explaining that a plaintiff has Article III standing to sue an entity for a constitutional violation when the entity has "some connection with the enforcement of the act").  In the context of the state-action inquiry, the Court finds that there is a strong, tight, and interlocking connection between Students United, SCSU, and the Board of Trustees in setting, collecting, and disbursing the challenged fees.

Students United concludes with the proverbial parade of horribles, asserting that finding state action on the part of Students United would mean that nearly every vendor of SCSU that provides services to students (for example, a private company that provides athletic uniforms) would be transformed into state actors.  ECF No. 66 at 12.  That argument can be materially distinguished in multiple ways, but a few suffice: state law does not grant the uniform company the ability to set its prices.  State law does not allow the Board of Trustees to unilaterally revise the uniform company's prices.  And state law does not compel SCSU to collect fees for the uniform company.

Because the complaint's factual allegations and the applicable legal landscape plausibly demonstrate that Students United is a state actor for purposes of Count I, that claim may proceed against Students United.

### b.    Whether Lackie Plausibly Alleges an Unjust Enrichment Claim

A claim for unjust enrichment arises under Minnesota law when a defendant receives a benefit from the plaintiff, and retention of that benefit is "not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).  Retention

of a benefit is not legally justifiable when the defendant received that benefit "illegally or unlawfully," or "in a manner that is morally wrong." *Herlache v. Rucks*, 990 N.W.2d 443, 450 (Minn. 2023) (citation omitted).

Students United argues that Lackie's unjust enrichment claim must be dismissed because at the time the fees were collected, Students United was "legally justified" in collecting those fees. ECF No. 66 at 18–22. Students United relies on the "good-faith defense" to Section 1983 claims, under which some courts have concluded that Section 1983 claims against private parties fail when such parties "reasonably relie[d] on established law." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 942 F.3d 352, 366 (7th Cir. 2019).

The Court rejects Students United's argument for two reasons. First, Students United cites no authority that a "good-faith defense" applies to unjust enrichment claims under Minnesota law. And it is not clear that Minnesota courts would impose such a requirement, as the Minnesota Supreme Court has "specifically cautioned against restricting the broad scope of the unjust enrichment remedy, given that the whole point of the action was 'to relieve against the too narrow procedure of the law.'" *Herlache*, 990 N.W.2d at 451 (quoting *Seastrand v. D.A. Foley & Co.*, 175 N.W. 117, 119 (Minn. 1919)). Given this caution, the Court is hesitant to graft a substantive limitation onto the unjust enrichment remedy that the Minnesota courts have not yet seen fit to impose.

Second, Students United ignores that unjust enrichment claims arise under Minnesota law not only when a defendant receives a benefit "illegally or unlawfully," but also when a defendant receives a benefit "in a manner that is morally wrong." *Id.* at 450.

14

Putting aside the issue of whether collection of the fees was illegal or unlawful at the time those fees were collected, a jury agreeing with Lackie's First Amendment argument may well conclude that it would be "morally wrong" for Students United to retain those fees. *Id.*; *see also Hepfl v. Meadowcroft*, 9 N.W.3d 567, 572–73 (Minn. 2024) (discussing the moral wrongfulness component of unjust enrichment). Consequently, the Court will not foreclose that claim now.

Lackie's unjust enrichment claim against Students United may thus proceed.

## II.   State Defendants' Motion to Dismiss

### a.   Claims against Wacker and Lee

The Court first observes that Lackie continues to pursue Counts I and II against Wacker and Lee, ECF No. 57 at 20–21, even though the Court has already determined that Lackie lacks standing to press those claims against Wacker and Lee, ECF No. 42 at 11. Lackie acknowledges in her briefing that she cannot bring those claims against Wacker and Lee but has included them solely for purposes of preserving issues for an appeal. ECF No. 72 at 18 n.17. With that understanding, the Court dismisses Counts I and II against Wacker and Lee for the reasons previously explained. *See* ECF No. 42 at 11.

### b.   Claims against SCSU, the Chancellor, and Members of the Board of Trustees

The State Defendants next argue that the claims against SCSU, and the official-capacity claims against the Chancellor and members of the Board of Trustees, are barred by sovereign immunity. ECF No. 70 at 6–11. The Eleventh Amendment to the U.S. Constitution generally bars a private party's suit against a state. *See Va. Off. for Prot. &*

*Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). That immunity from suit also extends to instrumentalities of the state, *see Humenansky v. Regents of Univ. of Minn.*, 152 F.3d 822, 824 (8th Cir. 1998), and to state officers sued in their official capacity, *Lewis v. Clarke*, 581 U.S. 155, 162–63 (2017).

Lackie agrees that sovereign immunity requires dismissal of SCSU and the official-capacity State Defendants. ECF No. 73 at 3. Lackie contends, however, that the Eighth Circuit and the Supreme Court should revisit the sovereign-immunity doctrine as it applies to Section 1983 suits. *See id.* at 5–10. Whatever the merits of that argument, it is for the courts upstairs to decide, not this Court. All this Court can do now is agree with Lackie that sovereign immunity bars her Section 1983 suit against SCSU and the official-capacity State Defendants. *See United States v. Cavanaugh*, 643 F.3d 592, 606 (8th Cir. 2011) (explaining that lower courts are bound to follow Supreme Court precedent "until such time that the Supreme Court itself overturns" that precedent).

The State Defendants' motion to dismiss is therefore granted.

\*       \*       \*

What remains in this case, then, are Counts I and III against Students United.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    The State Defendants' Motion to Dismiss (ECF No. 68) is **GRANTED**. All claims against the State Defendants are **DISMISSED WITHOUT PREJUDICE**.

2.    Students United's Motion to Dismiss (ECF No. 64) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 10, 2025                    _s/Laura M. Provinzino_
                                        Laura M. Provinzino
                                        United States District Judge